UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 09-CR-10017-GAO |
| | ) | |
| TAREK MEHANNA | ) | |
| | ) | |
| | ) | |

GOVERNMENT'S OPPOSITION TO MOTION FOR DISCOVERY

The United States of America, by and through United States Attorney Carmen M. Ortiz, Assistant United States Attorneys ("AUSA") Jeffrey Auerhahn and Aloke S. Chakravarty, and Jeffrey Groharing, Trial Attorney, Counterterrorism Section, United States Department of Justice, hereby responds to the defendant's motion for discovery.  The Government opposes the defendant's motion.

I.  **Applicable legal standards**

The discovery obligations of the Government in federal criminal law are bounded by specific limitations.  United States v. Bagley, 473 U.S. 667, 676 (1985)("the prosecutor is not required to deliver his entire file to defense counsel"); Weatherford v. Bursey, 429 U.S. 545, 559 (1977)(there is no general constitutional right to discovery in a criminal case.)  These limitations are discrete, and form the legal bases for requesting material from the Government, and many of them are self-executing and inter-referenced.  See, e.g., Fed. R. Crim. P. 12(h)(Jencks material at suppression hearing), 12.1 (alibi information), 12.2

(insanity information), 12.3 (public authority information), 16 (criminal discovery), 26.2 (Jencks Act material), 46(j)(Jencks material at detention hearing); 18 U.S.C. §§ 3500 (the Jencks Act) and 3505(b)(foreign business records); Fed. R. Evid. 404(b)(prior bad acts), Fed. R. Evid. 807 (residual hearsay exception); and Brady v. Maryland, 373 U.S. 83 (1963)(evidence that tends to exculpate the defendant on the question of guilt and is material to the verdict of the factfinder); Giglio v. United States, 405 U.S. 150 (1972)(evidence that tends to impeach the Government's witnesses), Local Rules 116.1 (Automatic Discovery), 116.2 (Exculpatory and Impeachment Evidence), 116.4 (Recordings).  These rules essentially provide for discovery of three categories of information: (1) those mandated by Rule 16 of the Rules of Criminal Procedure, (2) those mandated by Brady, Giglio and their progeny, and (3) those covered by the Jencks Act.  United States v. Presser, 845 F.2d. 1275 (6th Cir. 1988).  Unless supplemented by statute, these laws and rules are the bases of a defendant's right to discovery in the federal courts, especially in cases, such as this, which implicate the existence of classified national security information and information obtained through the Foreign Intelligence Surveillance Act (FISA). Cf. 18 U.S.C. App. 3 §§ 1-15; 50 U.S.C. §1806, 1825 (*in camera, ex parte* procedure for determining if discovery of FISA-materials is necessary).

The defendant is not entitled to all evidence known or believed to exist. See United States v. Agurs, 427 U.S. 97, 106 (1976)(the Government is under "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor"). As stated in United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980):

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

(citations omitted). See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).

The scope of the definition of "Government" for discovery purposes has long been understood to refer to the prosecutors and the prosecution team. Strickler v. Greene, 527 U.S. 263, 275 n.12 (1999); Kyles v. Whitley, 514 U.S. 419, 437-38 (1995); U.S. v. Osorio, 929 F.2d 753, 761 (1st Cir. 1991). That team is narrowed to the agencies and investigators associated with the case under indictment. The prosecution team is deemed to have knowledge of and access to anything in the possession, custody or control of any

3

federal agency participating in the same investigation of the defendant and of those agencies which are reasonably believed to be in possession of discoverable information. United States v. Sanchez, 50 F.3d 1448, 1453 (9th Cir. 1995). The Government should not be forced to embark on an expedition to discover additional information, even for potentially exculpatory information, without sufficient justification. See United States v. Casas, 356 F.3d. 104, 116 (1st Cir. 2004); United States v. Pelullo, 399 F.3d 197, 218 (3rd Cir. 2005); see also Commonwealth v. Beal, 429 Mass. 530 (1999). Nothing in Kyles imposes a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue or have reason to possess discoverable information. United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996).

The Government routinely and exclusively exercises this function in making assessments of discovery in the context of Brady, Jencks Act, and Rule 16 obligations. Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987); United States v. Caro-Muniz, 406 F.3d 22, 30 (1st Cir. 2005) (holding that prosecutorial examination suffices without the exculpatory nature of specific withheld materials also being identified); United States v. Merlino, 349 F.3d 144 (3d Cir. 2003).

II.  **The defendant's request for discovery**

The defendant has sought extensive additional discovery.  The Government objects to each of the defendant's requests because they are overbroad, irrelevant to the issues in this case, not permitted under the rules of discovery, outweighed by countervailing concerns of security and unnecessary to a fair adjudication of the issues in this case.  Many of these reasons are addressed in the Government's letter in response to the defendant's requests which is incorporated herein by reference.  The defendant's requests constitute the quintessential fishing expedition.  See, e.g., United States v. Santana, 83 F.Supp. 2d 224, 232 (D.P.R. 1999)("This motion smacks of a fishing expedition which seeks to cast a very large net.  We register our disdain for such practices here.").  Most of them are unsupported by an articulated legal or factual justification.  Some are in fact civil interrogatories seeking previews of testimony to be gleaned at trial.  The rules of criminal discovery are obviously much narrower than those in the civil realm.  Bowman Dairy Co. V. United States, 341 U.S. 214, 218 (1951); Cf. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122 (1934) (Cardozo, J.)("Justice, though due the accused, is due the accuser also.  The concept of fairness should not be strained till it is narrowed to a filament.  We are to keep the balance true.")

In support of his sprawling request, the defendant offers two general justifications, first, that the Government did not answer his requests to his satisfaction, and second, that the government has deluged the defendant with discovery without explaining the provenance of every item.  Respectfully, the government has in fact designated the source of each piece of discovery provided and has also answered his requests for evidence.  The Government remains willing to work with him for further clarification or correction in the future.  In many cases, the defendant's requests for evidence are for information which is not within the Government's discovery obligations but are rather invitations to engage in fishing expeditions.  While discovery practice is an inexact science, it is surely bounded by certain rules and practice norms.  Neither party should be permitted to use discovery as a weapon to create leverage for concessions by the court or the other party, especially when there is abundant work to be done by both before trial.

In a case, such as this, with extensive and complicated discovery materials, there are in fact numerous reasons why the defendant's requests are not agreeable to the Government, including the fact that they are outside of the rules of discovery.  Many of the defendant's requests seek patently to determine what the Government knows about the defendant, witnesses and other individuals.  The Government acknowledges and is attempting to

comply with its duties to provide any information that would impeach a witness, is exculpatory to the defendant, or is a statement of a witness that is anticipated to be within the subject matter of his/her testimony in the Government's case. However, the defendant's requests seek much more than custom, practice and the law allows. Some of the requests directly and without justification, seek classified national security information, in some cases where merely acknowledging the existence of such information may be classified. Many of the defendant's requests seek information which is irrelevant and overly burdensome. Some seek information which is specifically protected from disclosure. The Government has sought to narrow the universe of potentially discoverable materials by reviewing voluminous information, producing what it can, and following the Rule 16 and CIPA procedures in those cases where it cannot. In this case, as made known to the defendant early on, there are substantial concerns which militate against opening up the Government's files to the defendant.

One of the practical issues is the volume of information already produced. The Government has provided to the defendant a mere fraction of the information which the Government has had to search for discoverable information. Over the course of numerous months of providing discovery to the defendant since his arrest in

2008, he did not complain about the form or organization of production at a time when the parties may have been more easily able to accommodate the others' concerns.  The defendant's tactics are entitled to change, but the Government cannot do the defendant's work for him, and there is, even after distillation, a large volume of information through which both parties must wade in order to identify important information.  The Government has and will continue to be open to mutually agreeable sensible solutions to the difficulties attendant to a case with this much information to review and so few resources, complicated by busy trial schedules; but it should not be compelled to embark on unjustified discovery projects, opening immaterial files to counsel, or expose national security information unnecessarily in an effort to rummage for additional ammunition with which to attack the indictment.  The defendant is abundantly equipped to mount such an attack as it stands.

III. **Specific Requests**

The Government objects to the defendant's specific requests as described below.  To avoid repetition, the Government is not restating the defendant's request and incorporates by reference the reasons why this information is not discoverable as stated in its responsive letter to counsel (filed at Docket No. 112-2):

1.   Defendant's request for intercepted communications - The defendant's request for all communications in the Government's possession is much broader than the rules of discovery provide. Rule 16(a)(1)(B) requires that the Government produce "the portion of any written record containing the substance of any relevant oral statement" made by a defendant. Fed. R. Crim. P. 16(a)(1)(B). Moreover, the defendant's stated evidentiary need for such statements is rendered moot because the Government concedes that any intercepted communication not provided to the defendant will not be used against him.   Consequently, the Bruton and co-conspirator's non-hearsay concerns are immaterial to the production.   The defendant is not entitled to discovery of statements which are not going to be introduced at trial unless they exculpate the defendant or impeach the witness.

As stated in its responsive letter three months ago, the Government is not in a position to confirm or deny the existence of information not provided to the defendant which is classified national security information.   The Government has made any such information known to the court pursuant to Rule 16 and the Classified Information Procedures Act (CIPA).   Nevertheless, the defendant's motion for discovery of statements beyond that required under the rules of discovery is unjustified.

2.   Request of details of Interception authorizations - this request seeks details of the implementation of an investigative procedure whose existence, nature and scope are highly sensitive. As previously explained to the defendant, the nature and scope of authorities obtained through FISA is classified information, and there is a procedure of *in camera ex parte* review under the statute in which the Court determines whether such information must be produced to the defendant.   So the Court will only have to engage

in that process on one occasion, contemporaneous with this motion, the Government is filing a responsive pleading recommending that the defendant's parallel request for FISA applications, orders and supporting documents be delayed until it is ripe.

3.   FISA-derived information - The defendant was told that information obtained through FISA was going to be used against him on numerous occasions, including through formal notice on July 2009.  The Government's letter responding to his discovery request included a description of the materials provided to the defendant which were so derived.  This request is moot.

4-10.   FISA information - FISA litigation is addressed by the Government in a separate pleading.

13. Brady information - To the extent that the defendant requests a reaffirmation of the Government's solemn Constitutionally-derived obligation to provide exculpatory evidence to the defendant, the Government so acknowledges its continuing duties in this regard. The Government has sought to and will continue to provide any information which tends to exculpate the defendant.  While the Government has not identified information which tends to show that the defendant is not guilty or has a lesser role than alleged, the Government recognizes the duty to supplement, including the Government's duty to provide impeachment information at the appropriate time pursuant to the local rules.  Moreover, the Government's past and present intent is to err on the side of production to the defendant or the court.  The Government continues to search for such information and will either produce such information directly or follow the *in camera ex parte* procedures described previously if necessary.

14. "I" Drives - This appears to be a specific *Kyles* request which asks the Government to search networked computer drives for potentially exculpatory evidence.  While unfamiliar with an "I" drive per se, the Government has and will continue to search in every location which has a reasonable likelihood of containing discoverable information.

15-19. Impeachment information - As explained to the defendant previously, to the extent it exists, the Government has provided extensive impeachment information as required by *Giglio* and its progeny, and consistent with the Ogden memorandum cited by the defendant.  Some impeachment information, such as for example, payments to expert witnesses, is likely to be generated in the future as we near trial. The Government continues to search for such information. The Government further acknowledges the timing requirements of Local Rule 116.2(B)(2), and as explained, consistent with such timing, the Government will either supplement its discovery to the defendant or, if applicable, follow the procedures involving judicial review of such materials outlined previously.

20. Expert Witnesses - The Government agrees that a reasonable schedule regarding the disclosure of expert witnesses is appropriate in this case.  The Government has proposed a schedule of disclosure of Government expert information 45 days before trial, and a requirement that the defendant reciprocate two weeks thereafter.  The process to identify and retain experts is cumbersome for both sides, and setting too early a date, before the parties are exclusively immersed in this matter, may unwittingly hinder the usefulness of the expert testimony for both sides.

Nevertheless, the Government is open to setting a reasonable schedule which accommodates the realities of trial preparation.

22.   Rule 16(a)(1)(C) - This request appears to involve organizational defendants which is inapplicable here.   To the extent that this refers to expert witnesses, the Government intends to comply with Rule 703 according to a schedule set as described above.

23.   Tibyan Publications - In addition to the reasons stated in the Government's response to the defendant, this request amounts to a fishing expedition for irrelevant information which otherwise appears motivated by a selective prosecution claim for which the defendant has not made a sufficient showing.   United States v. Armstrong, 517 U.S. 456, 464 (1996)

24.   Entire Government files for Cooperating Witnesses - This request is overbroad, contrary to practice, established procedure and law, as well as contrary to the Government's interests of protecting the sensitivity of its investigative activities.   While the Government acknowledges its obligation to review the files of cooperating witnesses, and to disclose impeaching or exculpatory information, the information which must be disclosed from such review or shown to the court from such review is in the province of the prosecutor.   See Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under Brady, . . . it is the [prosecutor] that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final."); United States v.

Marshall, 109 F.3d 94, 97-98 (1st Cir. 1997) (burden on defense to show that undisclosed exculpatory evidence exists).  As indicated above, the Government is fully aware of its discovery obligations and will continue to provide the defendant with all materials required by law.

25.   Communications between government agents, witnesses and prosecutors - Communications between and among prosecutors, agents and witnesses are not inherently discoverable.  To the extent that those communications, however, contain otherwise discoverable exculpatory or Jencks information, the Government recognizes that it must search for such information.

26-27. Materiality of false statement - These requests constitute a civil interrogatory which is tantamount to seeking a preview of witness testimony to determine how the Government will prove that the false statements made by the defendant were material.  Trial testimony is the appropriate forum for that inquiry.

28-29. Information provided to other countries - These requests are beyond the scope of the discovery rules and are a patent attempt to learn what the Government knows about the defendant.  They also implicate Rule 16(a)(2) and infringe upon the executive's province over foreign relations.  See Haig v. Agee, 453 U.S. 280 (1981).

30. Terrorist Surveillance Program - To the extent that this request is subsumed by the defendant's first request for his intercepted conversations, the response is the same.  All of the defendants' communications either have been or will be reviewed by the Government.   If any of the defendant's communications are

13

required by law to be discovered to the defendant, or submitted to the judge for review if necessary consistent with FISA and CIPA, the Government will provide the materials as appropriate.

31-32.  Organization of Discovery – This issue is being addressed in a separate pleading.

33.  Determination of classified information – This request presumably aims to determine what information the Government has that would otherwise be produced to the defendant but-for the fact that it is classified information.  As explained previously, to acknowledge the existence of certain types of information in the possession of the Government would itself reveal classified information.  Moreover, with the exception of that material which has been and will be presented to the court pursuant to the CIPA and Rule 16, any other classified information which is appropriately within the Government's discovery obligation has been declassified and produced to the defendant.

34.  Identification of owners of hard drives – To the extent that those identities have not already been provided, the Government agrees to work with the defense counsel to identify the names of those from whom hard drives were seized.

35-36. All information about or involving the defendant – These requests seek information which is tantamount to opening the Government's files to see what the Government might know about the defendant.  To the extent that communications or other information is discoverable under the Rules and law described above, that

information is being disclosed either to the defendant or the court.

38. Recordings of the Defendant with an individual - Without confirming the location or means of recording, the Government confirms that all of the consensual recordings between the individual and the defendant, regardless of their relevance or location, have been provided.

39. Information about a particular individual - This bald request about a person who has not been noticed as a Government witness nor figures in the indictment and without any context, appears to be fishing expedition.

40. Information from Dar Al Mustafa - To the extent that the Government has information that tends to indicate that the defendant did not in fact lie to the government about his intentions in Yemen, that information would be provided to the defendant.  The defendant's request for all information known to the U.S. government about the school at which the defendant claimed to go to study religious education is far afield from a tailored request for exculpatory information and is tantamount to rummaging through the government's files.

42.  Information about Terrorist Training Camps in Yemen in 2004 - To the extent that such information is the province of expert testimony, an expert report will be provided to the defendant.  The operative issue at trial, however, is not whether such camps existed, but rather one of the defendant's intent. What the U.S. Government knew about the location and nature of the camps that did

exist is irrelevant. This request would also unnecessarily disclose classified national security information. The defendant is free to explore the presentation of testimony about such camps as he chooses through his own investigation.

43-49. Information about the defendant's relationship with terrorist organizations and information about those organizations – A criminal defendant is not entitled to *inculpatory* evidence the Government may have against him. To the extent that the Government intends to use documents against him at trial related to the translation and other specialized services which the defendant conspired to provide to entities that supported violent jihad, it has been provided to the defendant. The defendant seeks to learn all the information that the Government might have related to the defendant, and of al Qaeda, which is beyond the rules of discovery and would unnecessarily disclose classified national security information.

51-58. Reports of interviews with individuals - To the extent that reports of interviews of Government witnesses involve the subject matter of their testimony or are impeachment material, they will be provided along the timing described above. However, there is no law of discovery compelling the disclosure of non-exculpatory statements or other investigative activities of non-witnesses.

59-62. Reports of interviews with Al Qaeda leaders listed as unindicted co-conspirators - If the defendant can arrange such interviews, the Government would be very interested. As it stands, however, non-exculpatory information involving non-witnesses are not discoverable, and would also unnecessarily disclose national security information.

63.  Information about the defendant's discussions about domestic terrorist acts - Inculpatory information about the defendant's discussion of domestic terrorist acts will be elicited at trial from civilian witnesses who were not then known Government agents. Therefore, such information, to the extent it is memorialized in a report of interview, will be provided with other Jencks material. The requested information does not independently compose elements of the offenses for which the defendant stands charged, so this request is purely an attempt to elicit witness statements pre-trial.  To the extent that the defendant's memory must be jogged about his involvement in these conversations, the Government will provide the names of the executive branch members to counsel.

64. 11 (likely "all"[sic]) copies of jail calls of a witness - Consistent with the timing described previously, the Government intends to provide any recorded jail calls in its possessions of its witnesses involving the subject matter of their testimony or which is impeachment material.  Other than such information, since the Bureau of Prisons is not a member of the prosecution team, the Government does not automatically review such information.

65. Interviews of non-witnesses - the defendant expressly asks for that to which he is not entitled under the rules of discovery.  To the extent that an interview of a non-witness discloses exculpatory or impeachment information, that will be provided consistent with the timing described above.

70.  List of persons prosecuted "for publication of documents through Tibyan Publications" - This interrogatory not only misstates the nature of the charges, it requests a fishing expedition for irrelevant information which otherwise appears

motivated by a selective prosecution claim for which the defendant has not made a sufficient showing.  <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996).

71.  Interviews of a witness - to the extent that there exist reports of interviews of any Government witness, they will be provided pursuant to the Jencks Act and Rule 116.2 timing described above.

72-73.  Interviews and correspondence with co-defendant - To the extent that an interview of a non-witness discloses exculpatory information, that will be provided.  The Government has also provided some investigative interviews of the co-defendant in this case to the extent that they involve the allegations in the indictment.  However, information about or communications with the co-defendant which are not relevant to the indictment and which would otherwise be protected by Rule 16(a)(2) and other rules involving the executive's ability to conduct investigation to capture a fugitive and to conduct foreign relations, should not be disclosed.

74.  "[A]ll information the government or any agency is in possession of" - In context it appears this request seeks any information located on a private individual's computer.  In addition to an absence of justification for such a request, the government cannot provide materials which are not in its possession, custody or control.  The government has provided hard drives to the defendant based on the rules of discovery and of information which was in its possession.

75.  Administrative materials related to WITSEC - while the Government has disclosed promises rewards and inducements for its anticipated witnesses, the administrative materials attendant to those benefits and an individual's qualifications for those benefits are not subject to discovery.

76-77.  All information about an individual - The individual about whom the defendant seeks all information was convicted of various crimes in the United Kingdom and is not anticipated to be called as a Government witness.  The Government is under no obligation to produce  non-exculpatory information related to a non-witness.  A computer hard drive was provided to the defendant which contains relevant communications that involved the defendant which the Government may seek to introduce at trial, and therefore is discoverable under the rules.

78.  All information about an individual - The individual about whom the defendant seeks all information was convicted of various crimes in the Northern District of Georgia and is not anticipated to be called as a government witness.  As noted above, unless information related to this individual is exculpatory, the government is not obligated to disclose it to the defense.

79. Information about other investigations in which an individual cooperated with the Government - This item expressly requests information which is protected from disclosure under Rule 16(a)(2) and Roviaro and its progeny.  The government has provided an accounting of all the rewards and inducements provided to this witness encompassing both the instant investigation as well as for other investigations.  This accounting will be updated if necessary as we get closer to trial.

80.   Correspondence between an individual and the defendant - to the extent that the Government is in possession of correspondence between the defendant and the individual identified by the defendant, it has been provided.

81-83.   Correspondence between individuals and the Government - to the extent that the Government is in possession of correspondence between the individuals and the government which is Jencks or Giglio material, it will be provided in line with the timing described above.   Documented communications with the Government which do not concern the subject matter of a witness' testimony and are not impeachment material are not discoverable and are protected under Rule 16(a)(2) and Roviaro and its progeny.

84. FRE 801(d)(2)(E) statements - The government is not obligated to provide pre-trial disclosure of co-conspirator statements sought to be introduced.   United States v. Percevauslt, 490 F.2d 126 (2nd Cir. 1974); In re: United States, 834 F.2d 283, 286 (2nd Cir. 1987); United States v. Roberts, 811 F.2d 257, 258 (4th Cir. 1987); United States v. Disston, 612 F.2d. 1035 (7th Cir. 1980).   To the extent that such statements are written or recorded and among those intended to be exhibits, they will be provided consistent with the schedule for the parties' witness and exhibit lists.

85. The defendant's specific requests for exculpatory information - The defendant seeks information standing for five propositions which he claims if expressed by any person would be exculpatory to the defendant.   To the extent that a witness testifies about the defendant's character or their personal experiences with the defendant and that they cannot corroborate allegations of the indictment, such testimony is not inherently  exculpatory if the

witness was not in a position to observe the events charged.  A witness who says that the defendant did not rob a bank on Thursday and he doesn't think that the defendant would have robbed a bank on Wednesday, would not be inherently providing exculpatory information related to a Wednesday bank robbery.  Each of the defendant's specific requests suffers from this disconnect.

a.  The absence in a witness' subjective impression of the defendant's terrorist support activity, is not probative of the defendant's commission of the crime as alleged.

b. The defendant's attendance at schools in Yemen in 2004 does not mitigate whether the purpose of his travel was to attend a terrorist training camp as alleged.  That he may have also engaged in other activities in his journey is not probative of the facts alleged in the indictment.  The reasons for his travel and conspiratorial intent is not made more or less likely if he engaged in other activities in the process.  The duration of every conspiracy necessarily encompasses individualized activities which are not acts in furtherance of the conspiracy.

c.  The defendant is not charged with receiving terrorist training, rather in essence, that he conspired to receive such training and to use it to fight Americans.  A witness' subjective opinion as to the description of places where a defendant actually went is not probative of any fact alleged in the indictment.

d.  The defendant's general character is not probative of whether he committed the crimes alleged.

e.  The words "jihad" and "mujahideen" in the indictment are alleged to mean what the defendants intended them to mean.  While "jihad" in the dictionary definition has many meanings, in this case, the indictment makes clear that the defendants' steps in order to support their own and others' use of violence are the basis for their criminality.  That the defendant may also have

expressed non-violent manifestations of jihad in other circumstances does not make more or less likely that he expressed support for violent jihad in the alleged conduct. However, in the context of the charged conduct, that is, if in furtherance of the conspiracy the defendant expressed a belief which was inconsistent with his intended support for violent jihad, the Government has and will continue to provide such information to the defendant or to the court.

86. Other translations of "39 Ways" - The Government disagrees that there is anything exculpatory about other translations of a document which the defendant translated. The existence of other translations does not make a material fact more or less likely. This document, "39 Ways", figures prominently in this case not because the defendant is alleged to have been the exclusive translator of this document, but rather that he translated, edited and disseminated this document for a particular purpose consistent with the objectives of his criminal conspiracy. That other translations existed does not detract from his liability, but rather, further emphasizes that his translation was the most influential and widely disseminated version.

IV.       **Early Disclosure of Jencks material**

It is axiomatic that the Jencks Act governs disclosure of prior, non-exculpatory statements of a witness involving the subject matter of his testimony. Despite the defendant's motion for an order from the court compelling such early disclosure, the Government objects to the issuance of such an order. Rather, in respect for counsel and in keeping with contemporary practice, the

government has long-proposed and intends to provide early disclosure of such materials before trial, in this case proposing twenty-one days before trial.

"With respect to the statutory proscriptions upon the discretion of a district court judge under the Jencks Act, the overwhelming majority of cases--including cases from the First Circuit--adhere to a rule that is nearly absolute: district court judges may not, over the Government's objection, compel pretrial disclosure of nonexculpatory Jencks Act material earlier than the close of a witness's testimony on direct examination." United States v. Owens, 933 F.Supp. 76, 80 (D.Mass. 1996). See also United States v. Grandmont, 680 F.2d 867, 874 (1st Cir. 1982) ("A court may not compel the disclosure of statements of government witnesses before the conclusion of their direct testimony."); United States v. Neal, 36 F.3d 1190, 1197 (1st Cir. 1994); United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988) ("[T]he government may not be compelled to disclose Jencks Act material before trial." [citations omitted] ); United States v. Percevault, 490 F.2d 126, 129, 131 (2nd Cir. 1974) ("[T]he district court did not have the statutory authority to compel disclosure [of Jencks material], over the government's objection, prior to trial.").

V.   **Early Disclosure of *Giglio* material**

The government recognizes that Brady material, that which exculpates the defendant will be provided as discovered by the government.  To date, as previously represented, the government has not identified information as such, but has erred on the side of production of any materials which could even arguably be considered Brady.  Giglio information, that is, information which tends to impeach a witness, outside of that information which is required to be produced pursuant to the timing in Local Rule 116.2, is traditionally produced when Jencks information is produced.  This is a tradition which is scalable to any case, and with which the government intends to comply.  As previously stated, the Government anticipates such disclosure to occur twenty-one days beforetrial, and it continues to search for any such information as it is duty-bound to do. Consequently, both in order to thoroughly conduct a search and to follow the procedures of either producing information to counsel or the court, the Government proposes maintaining the same schedule with regard to Jencks and Giglio information.

VI.  **Conclusion**

Wherefore, the defendant's motion for discovery should be DENIED.


Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney


BY:  /s/ Aloke Chakravarty
ALOKE CHAKRAVARTY
JEFFREY AUERHAHN
Assistant United States Attorneys

JEFFREY D. GROHARING
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice


Date: January 21, 2011

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have discussed this matter with counsel, and this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/S/ Aloke Chakravarty
ALOKE CHAKRAVARTY
Assistant U.S. Attorney

25